**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MICAELLA CLAY<br>101 Taylor Avenue<br>Marysville, Ohio 43040, | ) CASE NO.<br>)<br>) JUDGE:<br>) |
| Plaintiff, | )<br>) |
| v. | ) **COMPLAINT FOR DAMAGES**<br>) **AND INJUNCTIVE RELIEF** |
| PNC BANK, NATIONAL ASSOCIATION<br>One PNC Plaza<br>Pittsburgh, Pennsylvania 15222, | )<br>) **JURY DEMAND ENDORSED**<br>) **HEREIN**<br>) |
| **Serve Also:** | )<br>) |
| PNC BANK, NATIONAL<br>ASSOCIATION<br>c/o Corporation Service Company<br>Registered Agent<br>50 West Broad Street, Suite 1330<br>Columbus, Ohio 43215, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| AND | )<br>) |
| PNC BANK, NATIONAL<br>ASSOCIATION<br>1850 Henderson Road<br>Columbus, Ohio 43220, | )<br>)<br>)<br>)<br>) |
| Defendant. | ) |

Plaintiff, Micaella Clay, by and through undersigned counsel, as her Complaint against

Defendant PNC Bank, National Association ("PNC"), states and avers the following:

**JURISDICTION & VENUE**

1. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Clay is alleging

   Federal Law Claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 28 U.S.C. §

2000e, the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq.*, and the Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

2. All material events alleged in this Complaint occurred in Franklin County, Ohio.

3. This Court has supplemental jurisdiction over Clay's state law claims pursuant to 28 U.S.C. § 1367 as Clay's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5. Within 300 days of the conduct alleged below, Clay filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2022-00038 against PNC ("Clay EEOC Charge").

6. On or about March 1, 2022, the EEOC issued a Notice of Right to Sue letter to Clay regarding the Charges of Discrimination brought by Clay against PNC in the Clay EEOC Charge.

7. Clay received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

8. Clay has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

9. Clay has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

10. Clay is a former employee of PNC.

11. Clay began working for PNC on September 9, 2019.

12. Clay worked for PNC as a Branch Sales & Service Associate.

13. PNC was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of

2



20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

14. At all times relevant herein, Clay was employed by PNC for at least 12 months and had at least 1,250 hours of service with PNC and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

15. Clay had an exemplary employment record with no significant history of discipline in the years that she worked for PNC.

16. Clay regularly received positive reviews and pay raises.

17. Despite Clay's previously positive employment record, PNC started conveniently finding and/or creating a basis to terminate Clay almost immediately after Clay reported discrimination.

18. Clay suffers from several disabilities including heart palpitations, Hashimoto's Disease, celiac disease, autoimmune hepatitis, asthma, a severe mushroom allergy, and herniated and bulging discs in her back ("Clay's Disabilities" or "Disabilities").

19. Clay's Disabilities substantially limit several of her major life activities, including standing, sitting, being outside in hot weather, walking, running, breathing, and working.

20. Clay candidly disclosed her Disabilities to PNC when she was hired.

21. Clay disclosed her Disabilities to each new manager placed at her PNC location.

22. Clay told her most recent manager, Sam Chung, that due to her Disabilities, PNC previously approved a more supportive chair for her to sit in, approved a special face mask for her to wear to protect her from the COVID-19 pandemic, and was flexible with scheduling her around doctor appointments.

23. Chung did not have a role in hiring Clay.



3

24. As a result of Clay's disclosure of her Disabilities, Clay was disabled within the meaning of the ADA and R.C. § 4112.01 *et seq.*

25. As a result of Clay's disclosure of her Disabilities, PNC perceived Clay as disabled.

26. Despite her Disabilities, Clay could perform her essential job functions with or without reasonable accommodations.

27. Clay told Chung that she has a severe mushroom allergy.

28. Clay told Chung that exposure to mushroom spores would result in a severe allergic reaction.

29. Clay kept an Epi-pen at the office for such an emergency.

30. During the week that Chung started working at PNC, Clay overhead Chung and an unknown coworker joking about her severe mushroom allergy.

31. Clay did not understand why her severe allergy was something to joke about.

32. Two weeks later, Chung brought mushrooms in to work.

33. Chung intentionally exposed Clay to mushroom spores.

34. After Chung intentionally exposed Clay to mushrooms at work, Clay suffered anaphylaxis.

35. After Chung intentionally exposed Clay to mushrooms at work, Clay had to be transported to the emergency room.

36. After Chung intentionally exposed Clay to mushrooms at work, Chung deducted hours from Clay's pay because she left work.

37. Clay provided Chung with doctors' notes about her allergy in response to the pay deduction.

38. Eventually, Chung was forced to reverse his payroll decision.

39. Clay took Short Term Disability leave in December 2020.

40. When Clay returned from medical leave, Chung initiated a campaign of hostility and discrimination against Clay.

4



41. Clay is a Hispanic woman.

42. Chung treated Clay, along with Clay's African American coworkers, poorly due to their races.

43. When an African American customer wearing gold chains entered the bank branch, Chung told Clay to, "Go see what P-Diddy needs," in a derisive tone.

44. P-Diddy is one of the famous monikers for Sean Combs, a famous African American rapper and entrepreneur.

45. Talia Last Name Unknown, a coworker who was African American, usually wore her hair in a head wrap.

46. When Chung started as manager, he prohibited Talia's headwrap.

47. The previous manager allowed Clay to wear a colorful Hispanic dress in celebration of Día de Muertos, but Chung informed Clay she could not continue this practice.

48. In preparation for May 5, 2021, Cinco de Mayo, Chung told Clay she would not be allowed to dress in "ethnic" clothes.

49. In or around April 2021, Clay called the PNC employee hotline and complained that Chung was discriminating against her, and others, based on her gender, race, and Disabilities ("Clay's Report of Discrimination").

50. Thereafter, the hotline investigators informed Chung that a complaint was filed against him.

51. In or around April 2021, Clay disclosed to Chung that she required surgery to remove a hernia and sarcoma in June 2021.

52. Clay told Chung that her doctor estimated that she would need four to six weeks to recover.

53. Clay spoke with human resources about the surgery and requested FMLA and short-term disability documents.

5



54. Clay provided human resources with documentation supporting her FMLA and short-term disability requests.

55. On or about April 20, 2021, Chung called Clay into his office.

56. An unknown female investigator from PNC was also present via speaker phone during this meeting.

57. In this April 20, 2021, meeting, Chung told Clay that two anonymous complaints had been lodged against Clay regarding alleged banking errors.

58. The first complaint was about an account Clay opened two years prior for a young lady who was biologically related to Clay but was raised by another family.

59. Clay had brought this situation to the manager's attention at the time the account was opened, and it had been previously resolved without issue.

60. The second complaint was about an alleged banking error Clay made in April 2021.

61. Clay allegedly made an error while completing a credit card application for a banking client.

62. Chung accused Clay of falsifying the application for the client and terminated her employment.

63. Clay did not falsify the application for the client.

64. PNC terminated Clay without warning.

65. PNC's stated reason for terminating Clay was pretextual.

66. Other similarly situated employees who had made actual banking errors had not been fired.

67. Brian Smeltzer, a similarly situated white, male employee received several complaints and made numerous errors.

68. Smeltzer accepted a valuable gift from a client in contravention of PNC ethics and policies.

69. Smeltzer coerced a client into submitting a new credit application when the client did not want to do so.

6



70. Smeltzer improperly refunded money to a client in a debit fraud dispute.

71. Smeltzer was not disciplined by PNC for any of his complaints and errors.

72. Smeltzer was not fired by PNC.

73. Smeltzer was not fired or disciplined because he is a white male.

74. Clay was terminated because she is a disabled, Hispanic, female who reported discrimination and requested FMLA benefits.

75. PNC has a policy against discrimination ("Discrimination Policy").

76. PNC's Discrimination Policy precludes retaliation against employees who complain about discrimination.

77. Alternatively, retaliation against employees who complain about discrimination is permitted by PNC.

78. PNC's Discrimination Policy precludes intimidation against employees who complain about discrimination.

79. Alternatively, intimidation against employees who complain about discrimination is permitted by PNC.

80. PNC's Discrimination Policy requires employees to report what they reasonably believe is a violation of the Discrimination Policy.

81. PNC's Discrimination Policy precludes retaliation against employees who report a violation of the Discrimination Policy.

82. Alternatively, retaliation against employees who report a violation of the Discrimination Policy is permitted by PNC.

83. PNC's Discrimination Policy precludes intimidation against employees who report a violation of the Discrimination Policy.

7



84. Alternatively, intimidation against employees who report a violation of the Discrimination Policy is permitted by PNC.

85. Chung's discrimination violates the Discrimination Policy.

86. PNC has a policy to investigate reports of violations of its Discrimination Policy.

87. An investigation should include interviewing the complainant.

88. An investigation should include interviewing the subject of the complaint.

89. An investigation should include interviewing the subject of the reported discrimination.

90. An investigation should include interviewing witnesses to the reported discrimination.

91. An investigation should include getting a written statement from the complainant.

92. An investigation should include getting a written statement from the subject of the complaint.

93. An investigation should include getting a written statement from the subject of the reported discrimination.

94. In response to Clay's Report of Discrimination, PNC did not interview Clay.

95. In response to Clay's Report of Discrimination, PNC did not interview Chung.

96. In response to Clay's Report of Discrimination, PNC did not interview witnesses.

97. In response to Clay's Report of Discrimination, PNC did not get a written statement from Clay.

98. In response to Clay's Report of Discrimination, PNC did not get a written statement from Chung.

99. In response to Clay's Report of Discrimination, PNC did not get a written statement from witnesses.

100.    PNC did not investigate Clay's Report of Discrimination.

101.    PNC did not give Chung a verbal warning as a result of the Clay's Report of Discrimination.

8



102. PNC did not give Chung a written warning as a result of the Clay's Report of Discrimination.

103. PNC did not give Chung a final warning as a result of the Clay's Report of Discrimination.

104. PNC did not give Chung a suspension as a result of the Clay's Report of Discrimination.

105. PNC did not give Chung a demotion as a result of the Clay's Report of Discrimination.

106. PNC did not terminate Chung's employment as a result of Clay's Report of Discrimination.

107. PNC did not discipline Chung at all as a result of Clay's Report of Discrimination.

108. After Clay's Report of Discrimination, Chung continued to discriminate against Clay and others.

109. PNC was aware of Chung's discrimination.

110. PNC did not take reasonable action to stop Chung's discrimination.

111. PNC has a progressive disciplinary policy ("Discipline Policy").

112. A verbal warning is the lowest level of discipline in the Discipline Policy.

113. Clay did not receive a verbal warning before the Termination.

114. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

115. Clay did not receive a written warning before the Termination.

116. A termination is the highest level of discipline in the Discipline Policy.

117. PNC knowingly skipped progressive disciplinary steps in terminating Clay.

118. PNC knowingly terminated Clay's employment.

119. PNC knowingly took an adverse employment action against Clay.

120. PNC knowingly took an adverse action against Clay.

121. PNC intentionally skipped progressive disciplinary steps in terminating Clay.



122. PNC intentionally terminated Clay's employment.

123. PNC intentionally took an adverse employment action against Clay.

124. PNC intentionally took an adverse action against Clay.

125. PNC knew that skipping progressive disciplinary steps in terminating Clay would cause Clay harm, including economic harm.

126. PNC knew that terminating Clay would cause Clay harm, including economic harm.

127. PNC willfully skipped progressive disciplinary steps in terminating Clay.

128. PNC willfully terminated Clay's employment.

129. PNC willfully took an adverse employment action against Clay.

130. PNC willfully took an adverse action against Clay.

131. On or about April 20, 2021, PNC terminated Clay's employment because of her disability.

132. On or about April 20, 2021, PNC terminated Clay's employment because of her perceived disability.

133. On or about April 20, 2021, PNC terminated Clay's employment because of her race.

134. On or about April 20, 2021, PNC terminated Clay's employment because of her gender.

135. On or about April 20, 2021, PNC terminated Clay's employment because she requested FMLA benefits.

136. On or about April 20, 2021, PNC terminated Clay's employment because she reported race, gender, and disability discrimination.

137. As a direct and proximate result of PNC's conduct, Clay suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.



10

## **COUNT I: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII**

1. Clay restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

2. Clay is a member of a statutorily protected class based on her gender under Title VII.

3. PNC treated Clay differently than other similarly situated employees based on her gender.

4. PNC discriminated against Clay on the basis of her gender throughout her employment with the company.

5. PNC terminated Clay's employment without just cause.

6. PNC terminated Clay's employment based on her gender.

7. PNC's discrimination against Clay based on her gender violates Title VII.

8. As a direct and proximate result of PNC's conduct, Clay suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **COUNT II: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

9. Clay restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

10. Clay is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

11. PNC treated Clay differently than other similarly situated employees based on her gender.

12. PNC discriminated against Clay on the basis of her gender throughout her employment with the company.

13. PNC terminated Clay's employment without just cause.

14. PNC terminated Clay's employment based on her gender.

15. PNC's discrimination against Clay based on her gender violates R.C. § 4112.01 *et seq.*

11



16. As a direct and proximate result of PNC's conduct, Clay suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: RACE DISCRIMINATION IN VIOLATION OF TITLE VII

138. Clay restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

139. Throughout her employment, Clay was fully competent to perform her essential job duties.

140. PNC treated Clay differently than other similarly situated employees based on her race.

141. PNC violated Title VII by discriminating against Clay due to her race.

142. On or about April 20, 2021, PNC terminated Clay without just cause.

143. At all times material herein, similarly situated non-Hispanic employees were not terminated without just cause.

144. PNC terminated Clay based on her race.

145. PNC violated Title VII when they terminated Clay based on her race.

146. As a direct and proximate result of PNC's conduct, Clay has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 et seq.

147. Clay restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

148. Throughout her employment, Clay was fully competent to perform her essential job duties.

149. PNC treated Clay differently than other similarly situated employees based on her race.

150. PNC violated R.C. § 4112.02(A) et seq. by discriminating against Clay due to her race.

151. On or about April 20, 2021, PNC terminated Clay without just cause.

152. At all times material herein, similarly situated non-Hispanic employees were not terminated without just cause.

153. PNC terminated Clay based on her race.

154. PNC violated R.C. § 4112.01 *et seq.* when they terminated Clay based on her race.

155. As a direct and proximate result of PNC's conduct, Clay has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT V: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

156. Clay restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

157. Throughout her employment, Clay was fully competent to perform her essential job duties.

158. PNC treated Clay differently than other similarly situated employees based on her national origin.

159. PNC violated Title VII by discriminating against Clay due to her national origin.

160. On or about April 20, 2021, PNC terminated Clay without just cause.

161. At all times material herein, similarly situated non-Hispanic employees were not terminated without just cause.

162. PNC terminated Clay based on her national origin.

163. PNC violated Title VII when they terminated Clay based on her national origin.

164. As a direct and proximate result of PNC's conduct, Clay has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VI: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

165. Clay restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

166. Throughout her employment, Clay was fully competent to perform her essential job duties.



13

167. PNC treated Clay differently than other similarly situated employees based on her national origin.

168. PNC violated R.C. § 4112.02(A) *et seq.* by discriminating against Clay due to her national origin.

169. On or about April 20, 2021, PNC terminated Clay without just cause.

170. At all times material herein, similarly situated non-Hispanic employees were not terminated without just cause.

171. PNC terminated Clay based on her national origin.

172. PNC violated R.C. § 4112.01 *et seq.* when they terminated Clay based on her national origin.

173. As a direct and proximate result of PNC's conduct, Clay has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT VII: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA**

174. Clay restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

175. Clay has a record of a disability.

176. Clay has a record of physical and/or mental impairment.

177. PNC was aware Clay missed work for medical treatment.

178. PNC treated Clay differently than other similarly situated employees based on her disabling conditions.

179. PNC treated Clay differently than other similarly situated employees based on her perceived disabling conditions.

180. On or about April 20, 2021, PNC terminated Clay's employment without just cause.

181. PNC terminated Clay's employment based on her disabilities.

14



182. PNC terminated Clay's employment based on her perceived disabilities.

183. PNC violated the ADA when it discharged Clay based on her disabilities.

184. PNC violated the ADA when it discharged Clay based on her perceived disabilities.

185. PNC violated the ADA by discriminating against Clay based on her disabling conditions.

186. PNC violated the ADA by discriminating against Clay based on her perceived disabling conditions.

187. As a direct and proximate result of PNC's conduct, Clay suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VIII: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. §4112.01 *et seq.*

188. Clay restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

189. Clay has a record of a disability.

190. Clay has a record of physical and/or mental impairment.

191. PNC was aware Clay missed work for medical treatment.

192. PNC treated Clay differently than other similarly situated employees based on her disabling conditions.

193. PNC treated Clay differently than other similarly situated employees based on her perceived disabling conditions.

194. On or about April 20, 2021, PNC terminated Clay's employment without just cause.

195. PNC terminated Clay's employment based on her disabilities.

196. PNC terminated Clay's employment based on her perceived disabilities.

197. PNC violated R.C. § 4112.02 when it discharged Clay based on her disabilities.

198. PNC violated R.C. § 4112.02 when it discharged Clay based on her perceived disabilities.



199. PNC violated R.C. § 4112.02 by discriminating against Clay based on her disabling conditions.

200. PNC violated R.C. § 4112.02 by discriminating against Clay based on her perceived disabling conditions.

201. As a direct and proximate result of PNC's conduct, Clay suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT IX: RETALIATION IN VIOLATION OF TITLE VII

202. Clay restates each and every prior paragraph of this complaint, as if it were fully restated herein.

203. As a result of PNC's discriminatory conduct described above, Clay complained about the gender discrimination she was experiencing.

204. Subsequent to Clay's reporting of gender discrimination to PNC, PNC continued to discriminate against Clay, and eventually created a pretextual reason to terminate her.

205. PNC's actions were retaliatory in nature based on Clay's opposition to the unlawful discriminatory conduct.

206. Pursuant to Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

207. As a direct and proximate result of PNC's conduct, Clay suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT X: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

208. Clay restates each and every prior paragraph of this complaint, as if it were fully restated herein.



16

209. As a result of PNC's discriminatory conduct described above, Clay complained about the gender discrimination she was experiencing.

210. Subsequent to Clay's reporting of gender discrimination to PNC, PNC continued to discriminate against Clay, and eventually created a pretextual reason to terminate her.

211. PNC's actions were retaliatory in nature based on Clay's opposition to the unlawful discriminatory conduct.

212. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

213. As a direct and proximate result of PNC's conduct, Clay suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT XI: RETALIATION IN VIOLATION OF TITLE VII

214. Clay restates each and every prior paragraph of this complaint, as if it were fully restated herein.

215. As a result of PNC's discriminatory conduct described above, Clay complained about the race discrimination she was experiencing.

216. Subsequent to Clay's reporting of race discrimination to PNC, PNC continued to discriminate against Clay, and eventually created a pretextual reason to terminate her.

217. PNC's actions were retaliatory in nature based on Clay's opposition to the unlawful discriminatory conduct.

218. Pursuant to Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.



219. As a direct and proximate result of PNC's conduct, Clay suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

<u>**COUNT XII:  RETALIATION IN VIOLATION OF R.C. § 4112.02(I)**</u>

220. Clay restates each and every prior paragraph of this complaint, as if it were fully restated herein.

221. As a result of PNC's discriminatory conduct described above, Clay complained about the race discrimination she was experiencing.

222. Subsequent to Clay's reporting of race discrimination to PNC, PNC continued to discriminate against Clay, and eventually created a pretextual reason to terminate her.

223. PNC's actions were retaliatory in nature based on Clay's opposition to the unlawful discriminatory conduct.

224. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

225. As a direct and proximate result of PNC's conduct, Clay suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

<u>**COUNT XIII:  RETALIATION IN VIOLATION OF TITLE VII**</u>

226. Clay restates each and every prior paragraph of this complaint, as if it were fully restated herein.

227. As a result of PNC's discriminatory conduct described above, Clay complained about the national origin discrimination she was experiencing.

228. Subsequent to Clay's reporting of national origin discrimination to PNC, PNC continued to discriminate against Clay, and eventually created a pretextual reason to terminate her.



18

229. PNC's actions were retaliatory in nature based on Clay's opposition to the unlawful discriminatory conduct.

230. Pursuant to Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

231. As a direct and proximate result of PNC's conduct, Clay suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT XIV: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)**

232. Clay restates each and every prior paragraph of this complaint, as if it were fully restated herein.

233. As a result of PNC's discriminatory conduct described above, Clay complained about the national origin discrimination she was experiencing.

234. Subsequent to Clay's reporting of national origin discrimination to PNC, PNC continued to discriminate against Clay, and eventually created a pretextual reason to terminate her.

235. PNC's actions were retaliatory in nature based on Clay's opposition to the unlawful discriminatory conduct.

236. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

237. As a direct and proximate result of PNC's conduct, Clay suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT XV: RETALIATION IN VIOLATION OF ADA**

238. Clay restates each and every prior paragraph of this complaint, as if it were fully restated herein.

19



239. As a result of PNC's discriminatory conduct described above, Clay complained about the disability discrimination she was experiencing.

240. Subsequent to Clay's reporting of disability discrimination to PNC, PNC continued to discriminate against Clay, and eventually created a pretextual reason to terminate her.

241. PNC's actions were retaliatory in nature based on Clay's opposition to the unlawful discriminatory conduct.

242. Pursuant to the ADA, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

243. As a direct and proximate result of PNC's conduct, Clay suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT XVII:  RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

244. Clay restates each and every prior paragraph of this complaint, as if it were fully restated herein.

245. As a result of PNC's discriminatory conduct described above, Clay complained about the disability discrimination she was experiencing.

246. Subsequent to Clay's reporting of disability discrimination to PNC, PNC continued to discriminate against Clay, and eventually created a pretextual reason to terminate her.

247. PNC's actions were retaliatory in nature based on Clay's opposition to the unlawful discriminatory conduct.

248. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"



249. As a direct and proximate result of PNC's conduct, Clay suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT XVIII: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

250. Clay restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

251. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

252. PNC is a covered employer under FMLA.

253. During her employment, Clay qualified for FMLA leave.

254. During her employment, Clay requested FMLA leave by asking PNC for FMLA documents so she could request FMLA leave for her surgery and recovery in June 2021.

255. PNC failed to properly advise Clay of her rights under FMLA.

256. PNC unlawfully interfered with Clay's exercise of her rights under FMLA in violation of Section 105 of FMLA and section 825.220 of FMLA regulations.

257. PNC's act of terminating Clay before she could take her requested FMLA leave violated and interfered with Clay's FMLA rights.

258. PNC violated section 825.300(c)(1) of FMLA and interfered with Clay's FMLA rights when PNC did not honor Clay's approved use of FMLA leave.

259. As a direct and proximate result of PNC's conduct, Clay is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

### COUNT XIX: RETALIATION IN VIOLATION OF FMLA

260. Clay restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

21



261. During her employment, Clay utilized FMLA leave.

262. During her employment, Clay requested FMLA leave.

263. During her employment, Clay submitted documentation supporting her request for FMLA leave.

264. After Clay utilized her qualified FMLA leave, PNC retaliated against her.

265. After Clay requested qualified FMLA leave, PNC retaliated against her.

266. After Clay submitted documents supporting her request for qualified FMLA leave, PNC retaliated against her.

267. PNC retaliated against Clay by terminating her employment.

268. PNC willfully retaliated against Clay in violation of 29 U.S.C. § 2615(a).

269. As a direct and proximate result of PNC's wrongful conduct, Clay is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Micaella Clay respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i)       Requiring PNC to abolish discrimination, harassment, and retaliation;

    (ii)     Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii)    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate



complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

(iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v)     Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring PNC to restore Clay to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge er personnel file of all negative documentation;

(c) An award against Defendant of compensatory and monetary damages to compensate Clay for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Clay's claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.



Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 683-7331
Fax: (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
        greg.shumaker@spitzlawfirm.com

*Attorneys for Plaintiff Micaella Clay*

## JURY DEMAND

Plaintiff Clay demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Gregory T. Shumaker (0095552)

